Case number 255540, United States of America v. Samuel Harris. Argument not to exceed 15 minutes per side. Mr. Westling, you may proceed for the appellant. Good morning. Good morning, Your Honors. First, I'd like to reserve three minutes for rebuttal. Good morning. May it please the court. My name is Richard Westling, and I represent Samuel Harris. We're pressing three issues from the trial in this case before this court today that we believe all affected Mr. Harris's right to a fair trial. The three issues the court's well aware of from the briefing relate to a jury instruction issue on advice of counsel, relate to certain comments made by the prosecutor that also, in our view, connected deeply to the advice of counsel defense in the case, and to the district court's decision not to admit certain statements that were made on a tape-recorded conversation that Mr. Harris, our client, and his partners had with certain federal agents back in 1999. I think I've got the year wrong, but that just shows my age. And with that, I think I'm going to start, obviously, with the jury instruction, because I think that is probably the most significant piece of law we want to present to the court this morning. As the court is aware, this was a lengthy trial. We spent eight and a half weeks, a variety of witnesses, put on a meaningful defense case. And during the course of that trial, two lawyers were called to the stand, both of which Mr. Harris had met with before he started his business selling genetic testing. The government put on lawyer number one, Ms. Kimball. We called Mr. Esseltheim. And in each case, there was lengthy discussion through those witnesses about various conversations with Mr. Harris and the advice that was given. This case, in our view, came down largely to the government claiming that Mr. Harris's activity using two lawyers, one which took a position contrary to what he ended up doing, and the other who said it was fine to do what he was doing, was sort of a case of lawyer shopping. That was a big issue through the course of the trial. And fundamentally, when we got to the close of the evidence after putting on tremendous amounts of testimony related to legal advice, we asked the court for advice of counsel jury instruction. Judge Richardson found that we had not sufficiently satisfied the requirements for that instruction, primarily due to his finding that there was not evidence of full disclosure to Mr. Esseltheim, the key lawyer from our defense perspective, in the record. Can I stop you right there? Sure. I just want to make sure one point about your argument. This particular part of the argument, the pertinent fact point, does this go to all three counts or just the first count? I think the pertinent issue goes to only the jury instruction question, if that's what you're asking. Or do you mean all three counts that are in the indictment? All three counts in the indictment for which he was found guilty. I think it goes to all three, because the structure of the indictment was. Well, I'll just tell you what I might be missing, and you can help me with it. Count one is the paying, right? Isn't that count one? And then two and three are the receiving? Have I got it wrong? No, the first, there's a conspiracy count, Your Honor, and then there are two counts of receiving. So in both cases, there's a conspiracy to deal with kickbacks, broadly written. And then there are two specific counts that he was convicted of that relate to the payments made by the lab to Mr. Harris's business. So in both cases, he's the recipient in those counts. And the point of the pertinent fact being that he was paying employees on a per transaction basis, not salary, that would go to all three counts. No, our position, it doesn't go to any of the counts, because none of those counts specifically called out the way he paid those sales reps as a kickback. All right, let me see if I can get this a slightly different way. If you're right about this, it would affect all three counts. That's correct, Your Honor. I apologize if I was being obtuse. All right, got it. No, I think it affects all three. And I think, importantly, the other point I'll make at this point, since you brought that up, is that Judge Richardson recognized the significance of not giving the instruction in orally denying our motion for a new trial when he acknowledged that the good faith instruction he gave would have affected the two substantive counts, but would not have applied to the conspiracy count. Whereas, had he given the advice of counsel instruction, it would have applied to all three. And so from our perspective, the pertinent fact issue, as well as the importance of the- Why don't you address the pertinent fact issue? Because I guess my first instinct was to appreciate what Judge Richardson was thinking. It did seem like a pertinent fact, and that seemed problematic. So I think the question here is, when it comes to what the charges are, what we're defending, what we have in front of us are all kickbacks that relate to payments received from the lab to Mr. Harris. And while there is clearly evidence in the record, I can't deny that in any way, that came out about payments to sales reps, there is no specific allegation in the indictment that relates to that. Why is that required? I mean, there's indictments charged generally, and then the government fills out that case at trial. That's how every criminal trial proceeds. Well, I think in this case, Your Honor, I would say it's important because the question becomes, in my view, whether Mr. Esselstyn had all of the facts he needed to give the advice on the issues that the jury had to decide. And so let's just say there was some failure to disclose on Mr. Harris's part for hypothetical purposes, that he didn't tell him about something that was going on with the sales reps. I don't believe, in my view, that the law says that that is a material fact in connection with advice he's giving on a separate transaction between the lab and the company. And so in essence, what the government's doing is pointing to the alleged failure to make a disclosure about sales reps and saying that's relevant to whether Mr. Esselstyn had all of the facts he needed to give Mr. Harris a view about whether it was acceptable to take the payments from the lab. I guess I'm puzzled by that. I mean, why isn't it relevant that he was paying these employees on a per-transaction basis? Why doesn't that suggest it was a kickback scheme at the beginning and the end? And why doesn't that allow inferences that the receipt from the lab are kickbacks? But I think the difficulty is thinking about this from the presence of the jury in the room, where they're never instructed that the sales reps' deals, if you will, are relevant to anything they have to consider. And so while there's evidence, and I think it goes to whether there was intent, I understand all of those points. I think the question becomes whether or not Mr. Harris, and again, just to be clear from a record perspective, we take a- Can I just stop you there? Because I'm just following what you're saying and why there's a jury confusion point. He wants to put in evidence, I relied on counsel for this doing what I did. That's what he wants to say.  And we have a rule that says, I mean, that's a very powerful piece of evidence in a case like this. And our rule says, well, you can't rely on that if you didn't tell the lawyer all the relevant facts. And this is a relevant fact. I can't imagine someone saying, you can't admit this in trial, that here's how he did it. He paid them on a per-transaction basis. So I don't understand why that's a jury confusion issue. He has a very powerful piece of evidence he wants to get in. We have a pretty high threshold before we let it in. And this is part of the threshold. Well, so I think what I'm trying to articulate, maybe inartfully, Your Honor, is that I think the question of whether the material facts were disclosed to the lawyer has to do with whether or not the lawyer's advice is proper. So the theory we have is that in order to get advice from a lawyer, you have to tell them everything. And whether or not Mr. Esselstyn understood the way the agents were being paid, I don't think that goes to whether or not his advice on whether Mr. Harris can receive the payments from the lab is legal or not. In other words, yeah, no, I'm just puzzled by that. Because I get your point that it's maybe an indirect inference, but it's still an inference. So it's a relevant point. I can't imagine the lawyer not wanting to know that if the lawyer's reputation is going to turn on blessing or not blessing something. And I think just to sort of tease that a little bit factually, the record here was that Mr. Esselstyn testified when asked about were you aware. Yes, I understood he was going to be paying them one way. But in fact, they were paid a different way. But what wasn't clear at any point is sort of because these contracts changed numerous times, sort of what the knowledge base was when. In other words, was Mr. Esselstyn ever asked to advise on the agents? How did that relate to the issues relating to the lab? I mean, here we have a lawyer who's basically directly involved in helping Mr. Harris receive the payments he's convicted of receiving. So he's calling the lab saying, you should pay this. Do you have a timing point about when the advice of counsel was given? Well, I mean, the problem is it happens over a period of three months. So it's not a one meeting thing. He is talking to Mr. Esselstyn literally every day during this period. And all I'm saying is that the record seems to say that Mr. Esselstyn says, I don't remember being told about that. But it is not clear what he actually knew. And again, it wasn't brought out in the record because it wasn't particularly material to the charges in the case. But I think in order to sort of make sure I've finished this point, if I can move on, but I'm happy to obviously address your question if it's still hanging out. No, no, no. I think the important thing, too, is that the court has mentioned this is a high standard. I don't disagree. But I do think that the holding in Duncan makes clear that the question here is, what is the amount of evidence necessary to get the instruction so the jury can decide whether this is a defense? Our view here is that Judge Richardson basically made a decision to keep the instruction from the jury and in the process stepped into a role he should not have had in this trial. That because of the any foundation standard set out in Duncan, there was sufficient evidence in this record about whether or not full disclosure had been made. That that was an issue for the jury to decide after it was properly instructed. So it's not a gatekeeping a la Daubert type situation? I don't think it's the same standard. I think what this court has said repeatedly, and Duncan has been reaffirmed in several subsequent cases, is that any amount of evidence, and I think it goes so far as to qualify that that can be of questionable reliability. I think that the language is, even if that evidence is weak, insufficient, inconsistent, or of doubtful credibility, which suggests to me that the burden to get the instruction is simply that there's evidence in the record about the facts around disclosure, not whether the judge makes a determination that full disclosure was made. Because in the process, we, in essence, are deprived of putting a defense before the jury in a way that, for example, the government wouldn't be in putting its evidence out. A different standard is being imposed on this affirmative defense, and a higher burden imposed on the defendant in defending himself. What is the point you're making square with the abuse of discretion review? Well, I think the issue with abuse of discretion, which applies to all jury instructions, I think is that you still have to follow the law that this court has issued in its rulings. Here, Duncan very clearly says the standard is one of any foundation. And in our view, the court took the position that it had to be at least 98% or more in order to get this instruction, and that that is a bar that's much too high for any defendant to have to meet before the jury is allowed to consider this key defense at trial. And so from that point of view, I see my time is up. So I'll yield. OK. Thank you very much. And the government. Good morning. Morning, your honors. May it please the court. Nick Golden on behalf of the United States. I'm going to start with the jury instruction issue, obviously, since that's what the court has been talking about so far. And I heard my friend talking about Duncan. He just said the standard is any foundation in the evidence. And that's right. But the question is, any foundation of what? And the of what is of full disclosure, not just any disclosure. So I think the court's focus needs to be on whether. Just out of curiosity, I hadn't thought about this as much as I should have. But I was listening and saying, well, yeah, you could kind of see the lawyers debating this with the jury. You get the instruction, and then the two sides debate whether the lawyer's advice means anything, because he wasn't told this fact. And then you debate in front of the jury whether that fact mattered to the advice. Am I missing? I mean, your honor, I think you could have that kind of regime. I think what Duncan and Lindo have said is that there is a gate. This court's decisions have said there is a gatekeeping role. There does have to be some evidence of full disclosure. I think it's pretty common that to get jury instructions, there's got to be some foundation in the evidence, typically. And so here, it's just some evidence of full disclosure. And I do want to. OK, so we'll say you're right about that. How about on the pertinent fact that a lot of this was about receipts, and this was on the paying side? Why does that make it a pertinent fact? So two responses to that. Your honor, I think, as we said in the brief, if you look at the count one anti-kickback statute conspiracy in the indictment, there is that conspiracy as charged in the indictment does include the fact that Secure Health was paying its representatives on a per patient basis. And you can specifically look at paragraph 85 of the indictment, which we flagged in the brief. And also, I think paragraph 70 and 71 are relevant to that point. If you look at the government's closing argument to the jury, we cited these pages of the record in our transcript as well. Can I just stop you there? Is that what you just said, proof that maybe they should have gotten the instruction, but just as to counts two and three? So then the second part of my answer is going to be about counts two and three. And so if the court looks at Mr. Esseltyn, so Mr. Esseltyn, or excuse me, Esseltyn, wrote a compliance memorandum. And that compliance memorandum was introduced at trial. It's Defense Exhibit H9. And he wrote that in May of 2019. And the court can read this memorandum. It's only about six pages long. The way Mr. Esseltyn's memorandum proceeds is he says, basically, yes, at first blush, this whole arrangement looks like a potential anti-kickback statute violation. And he goes through some safe harbor provisions. And he says, it's not going to fit in any of the safe harbors that he discusses. But then what he ultimately says is, I think this might be able to fit under an OIG advisory opinion. And that advisory opinion lays out some factors. And Mr. Esseltyn is kind of going through those factors. And when he's doing that, one of the things he specifically notes, and I think it's actually pretty important to his analysis if you read the memo, is his understanding that SecureHealth is paying the sales representatives on a flat monthly basis, not per patient. So I think that, and that kind of goes to his. But that just takes me to the question I just asked you. That might show that it was relevant to count one. No, Your Honor. Because I think that in the compliance memorandum, I think Mr. Esseltyn's advice in there goes to the legality of SecureHealth's whole business, including accepting the payments from Crestar the laboratory. So I think it is pertinent to his entire analysis. And I do want to, I mean, I think my friend used the word material a few times. I think Your Honor was using maybe relevant. I mean, the language from Duncan and Lindo is pertinent, which I think is basically the same as relevant. But it's not, it's lower than material, I would say. It's just something like, would this, would it be pertinent for the lawyer to know this? And as the court's questions to my friend were suggesting, the fact that SecureHealth is paying pretty obvious kickbacks to its field marketers is pretty clearly pertinent. I don't want to get, I don't want to spend my whole time talking about this specific fact of the, how they were paying the reps though, because I think that's kind of one piece of the lack of full disclosure is this, this like one affirmative place in the record where you can look and see there was a fact not disclosed. But more broadly than that, there was not any evidence of full disclosure at any point in the trial. And so SecureHealth had basically four principles. There's Sam Harris, the defendant who didn't testify. Then there's Mr. Meisbach and Mr. Duffy. Their testimony doesn't really add anything to the picture here. And the defendant's not even really relying on their testimony here. And then you get to Spencer Harris, the defendant's brother. And I think Spencer Harris is probably as close as they got to some evidence of full disclosure. But if you look at Spencer Harris's testimony, he acknowledges that it was his brother, Sam Harris, who did most of the communications with Mr. Just to make sure I'm getting, you're trying to make the point there are other people that were talking to the lawyer? Is that the point you're trying to get at? What I'm trying to say, Your Honor, is I'm trying to say where could evidence of full disclosure have come from, right? It would have to be sort of one of the people who was in charge of SecureHealth. And what I'm saying to you is of those possible people, there's the defendant, Sam Harris, who didn't testify. So we don't have any- You're onto the brother and you're about to get to communications he had with the lawyer? Is that what you want to say? What I'm saying is if you look at the brother's testimony, his testimony was that his brother, Sam, the defendant, was the one who did most of the communications with Mr. Esselstyn. And so Spencer Harris has a kind of a foundation of knowledge problem with his testimony, which is that he, by his own admission, it was his brother, the defendant, who was doing most of the communications with the attorney. And so there just was, at no point was there ever offered any evidence of full disclosure of all pertinent facts to Mr. Esselstyn. My friend has taken issue with the district court statement that 98% disclosure isn't enough, but I think that's exactly right. Because I think what Mr. Harris is doing here is he is conflating some evidence of full disclosure, which is what this court's case has required, with just evidence of some disclosure. And the district court is absolutely right to focus on full disclosure. 98% is not enough because, I think as this case shows, if you leave out 2% of the information, that could be extremely pertinent. It could be even outcome dispositive to an attorney's advice. I did wanna touch on the good faith and willfulness instructions that the jury got in this case and that we've argued substantially covered the same ground as the advice of counsel instruction. And so if you look at the willfulness instruction, that told the jury they had to find that Mr. Harris had the specific intent to do something he knew was unlawful. And then the good faith instruction told them that defined good faith as a belief or opinion honestly held the absence of malice or ill will and intention to avoid taking unfair advantage of another. And it told them that it's a complete defense to anti-kickback statute liability if he had good faith defined that way. And so the jury here was told all that. And we think that that substantially covered the same ground as the advice of counsel. Is the instruction actually given? Did it use the word, phrase good faith? The instruction they actually got? Yes, your honor. The one that he proposed? No, your honor, they received a separate good faith instruction. There were multiple instructions at issue. There was this requested advice of counsel instruction. What I'm actually asking is a little more technical. The one they got talks about a belief and opinion honestly held, right? Yes, your honor. And I'm just trying to say, I'm just trying to see if they actually, do the words good faith appear? Or does that not really matter? Because opinion honestly held is the same thing. The words good faith do appear. I'm looking in the record at page ID 13574. And the sentence starts, the instruction starts, a defendant does, while the term good faith has no precise definition, it encompasses, among other things, a belief or opinion honestly held. And it goes on. In determining whether a defendant acted in good faith, you must consider the totality of the evidence presented. And it goes on to say, on the next page, the good faith of a defendant is a complete defense, simply inconsistent with the defendant violating the anti-kickback statute. And so when you put all those things together, I think it covered the same ground the advice of counsel instruction would have covered. You can see that if you look at Mr. Harris's closing argument, he makes exactly the same type of arguments about his good faith reliance on Mr. Esselstyn's advice as he would have made if he'd gotten the advice of counsel instruction. So I think the advice of counsel instruction is fairly viewed as just like a more specific form of the general instructions that he got. I would also just kind of quickly point out, you know, the good faith instruction that the court gave here was this court's pattern instruction 10.04. That's actually a fraud instruction that was modified to apply to the anti-kickback statute here. So it's not necessarily going to be true that that good faith instruction is gonna be given in every anti-kickback statute case. Similarly, on willfulness, this court's pattern instruction 2.05, it doesn't provide an across the board definition of willfulness. What it basically says is, you know, willfulness is a term that has different meanings in different contexts, and so it doesn't try to provide just one definition. But my point is that not every anti-kickback statute case is going to include the same combination of good faith and willfulness instructions. So like if you say here that these instructions that this jury got substantially covered the same ground, that's not going to mean that every anti-kickback statute defendant or even every defendant more broadly is gonna have the same set of circumstances. Happy to take any other questions the court has. I think we're good. Thank you very much. Appreciate your presentation.  Senators, I wanted to just point, go back to the pertinent facts issue. And I think what's important is, in my view, what the indictment does or doesn't include in terms of what's pertinent. Now it may be that the court sees that more as to whether it relates to the attorney's advice, but from my point of view, the issue here is, is it pertinent to the advice he gave as it relates to the charges being defended? And I think it's important to note that while my colleague is correct that the indictment does talk about the payment of sales representatives, it does not talk about any details around that. It doesn't explain how they were paid. It doesn't explain that's allegedly a violation of the law. It is simply a fact that exists in the indictment. So there was no charge before the jury on that issue. And from our perspective here, what we were defending or trying to defend was many things. Obviously, and the jury obviously found that it acquitted on the healthcare fraud counts, where I think a lot of this evidence about the sales reps was far more relevant. But on the kickback statute counts themselves, which related to payments from Crestar Lab to SecureHealth, our view is that Mr. Esselstyn testified that he knew everything he needed to know, that he saw every contract, that he was involved with all of the representatives at Crestar directly himself, and he also solicited those payments on behalf of Mr. Harris. And so with all of that direct involvement by Mr. Esselstyn and his understanding of those facts, we believe there was a sufficient record before this court to show that there was enough evidence of full disclosure, any foundation to warrant the instruction. But what's your reaction to the point that was just made about the good faith instruction covering most of this anyway? So I would say two things about that, Your Honor. I mean, first, I think having done this for a while, a good faith instruction is obviously very helpful. I was very happy to get it. But it's not the same as the jury understanding the legal significance of attorney advice if they find the elements of that defense are met. It is a much more, in my view, sort of look at a spectrum, what do you think about the defendant's good faith? If they make the findings required by the advice of counsel instruction, they must acquit. And so I think it is a far more direct sort of instruction on the defense that we believe we provided at trial. And therefore, it was error not to give it. In addition, I think Judge Richardson also, and again, ruling on the motion for a new trial, made a clear finding that it was not the same to have given the good faith instruction because he acknowledged it did not apply to the anti-kickback conspiracy count, but only to the two subsidive counts. And that's the instruction he gave. It was as to counts 26, and I don't remember the other one, but the two subsidive counts, not the conspiracy. Whereas an advice of counsel instruction would have gone to the conspiracy count. And I think he acknowledged in ruling against us on the motion for a new trial that he understood that point and accepted it. So I think this is not a situation where the instructions as given were adequate. Hey, thank you very much. Thank you. I appreciate your arguments and your briefs and I see Mr. Westling, your court appointed counsel, so thank you very much for your service. We really appreciate it. It's real credit to the system. Okay, the case will be submitted and the clerk may call the second case.